(26 Misc. Rep. 158.)

## McCARRON v. McCARRON.

(Supreme Court, Special Term, New York County. January, 1899.)

MARRIAGE—ANNULMENT.

A decree declaring a marriage void, defendant being at the time of the ceremony already married to another, will be granted, though defendant testifies that plaintiff knew thereof; his testimony that she told him that she had a divorce being corroborated by the testimony of another that she also told him that she had a divorce.

Action by John J. McCarron against Minnie L. McCarron. Decree for plaintiff.

Edward H. Kelly, for plaintiff.
John P. Everett, for defendant.

WERNER, J.    This is an action brought to set aside the marriage between the parties, on the ground that at the time when it was contracted the defendant's husband by a former marriage was living. The marriage between the plaintiff and the defendant took place in the city of New York on the 25th day of November, 1897.    It appears that the defendant was married to one Henry H. Hibell in the city of Newark, in the state of New Jersey, on the 24th day of September, 1888.    In October, 1896, the defendant presented to the chancellor of the state of New Jersey a petition praying for a divorce from said Henry H. Hibell on the ground of his desertion.    Such proceedings were thereupon had in the action thus commenced that on the 24th day of December, 1897, a decree was made by the court of chancery of New Jersey that said Henry H. Hibell and Minnie L. Hibell be divorced, and freeing each of the parties to said marriage from the obligations thereof.    The parties to this action lived together as man and wife from the time of the marriage ceremony, on the 25th day of November, 1897, to the 24th day of January, 1898. The only real dispute in the evidence herein arises upon the question whether the plaintiff, at the time of his marriage to the defendant, knew that the latter was married and undivorced, or not.    The plaintiff testifies that he first heard of defendant's prior marriage about the middle of September, 1897, and then he learned of it from the defendant herself, under circumstances which led him to believe it to be a joke.    It is quite clear that he knew of it just before his marriage to the defendant, but he explains that he was told by defendant that she had secured her divorce from her former husband.    The defendant says the plaintiff knew as early as March, 1897, that she was married and undivorced, and relates several conversations in which the matter was discussed.    The dispute in this regard is material only upon the question whether the plaintiff is entitled to the

relief which he seeks in this action.    Upon the undisputed facts established herein, the marriage between the plaintiff and the defendant was void ab initio.    If, however, the plaintiff contracted the marriage with full knowledge of the situation, a court of equity would simply leave him where he had placed himself, and refuse its decree formally declaring said marriage void.    As bearing on this conflict of evidence, there are several circumstances which tend to corroborate the plaintiff in his claim of good faith.    In the first place, the defendant was married under the name of Minnie Lorete Arbuthnot, which was her maiden name.    The witnesses to the marriage ceremony were Sophie Doniedion and William W. Peterkin.    The former testifies that, although intimately associated with the defendant, she did not know that the defendant had been previously married until about an hour before her marriage to the plaintiff, and then she believed that defendant's husband was dead.    Peterkin testifies that he had known defendant for several years before her marriage to the plaintiff; that he knew she was married to Hibell, but was under a pledge not to divulge his knowledge without defendant's permission. Just before the marriage of the plaintiff and defendant, the latter was employed by Peterkin, and she told him of her engagement to the plaintiff.    Peterkin thereupon asked her if she had obtained her divorce from Hibell, to which she replied in the affirmative.    The facts not contradicted by the defendant so strongly corroborate plaintiff's claim of good faith as to overcome the circumstances from which an inference of bad faith could be drawn.    There being no issue of said marriage, I am inclined to think that the ends of justice will be subserved by granting to the plaintiff the decree prayed for in the complaint.    No costs to either party.    Let findings and decree be submitted in accordance herewith.    Ordered accordingly.